**In re Dana M. HARTWICK, Debtor.**

**No. 06–31241.**

United States Bankruptcy Court, D. Minnesota.

Oct. 13, 2006.

John D. Lamey, III, Lamey and Pacyga, P.A., Oakdale, MN, for Debtor.

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter was heard on September 14, 2006, on the United States Trustee's

(UST) motion to dismiss the debtor's bankruptcy case under 11 U.S.C. § 707(b). Michael Ridgeway appeared on behalf of the UST, and John Lamey appeared on behalf of the debtor. Having considered the arguments of counsel, reviewed the briefs, and being fully advised in the matter, the Court now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I

This dispute concerns proper application of the means test in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The UST claims that a proper completion of the means test Form B22A in the debtor's case raises the presumption of abuse in her filing for relief under Chapter 7. The UST raises two objections to the debtor's Form B22A submitted with her petition in her bankruptcy case. The first is to the debtor's deduction for the Local Standard amount allowed for vehicle ownership expense, even though the debtor had no purchase or lease payments owing on her vehicle when the case was filed. The Court overrules the objection, concluding that the debtor is entitled to claim the expense under 11 U.S.C. § 707(b)(2)(A)(ii) and (iii). The second objection is to the debtor's claim of her actual monthly mortgage debt at filing as a deduction, which the UST objects to because she executed a statement of intention to abandon the property, and the property is now in foreclosure. The Court overrules the objection, concluding that the debtor is entitled to deduct the monthly mortgage debt under 11 U.S.C.

§ 707(b)(2)(A)(ii) and (iii) as the actual amount owing when the petition was filed.[1]

## II

In applying the means test, BAPCPA requires use of applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards. These standards are used by IRS collection agents in working with delinquent taxpayers in collecting delinquent taxes. Housing and transportation expenses are covered by the Local Standards, and proper use of the Local Standards is the issue in this case.

*The Transportation Ownership Expense Allowance.*

■ Several courts have considered the appropriate use of the Local Standards for transportation vehicle ownership expenses, including two bankruptcy courts in the Eighth Circuit. See: *In re Skaggs,* 349 B.R. 594 (Bankr.E.D.Mo.); *In re McGuire,* 342 B.R. 608 (Bankr.W.D.Mo.2006); *In re Fowler,* 349 B.R. 414 (Bankr.D.Del.2006); *In re Demonica,* 345 B.R. 895 (Bankr. N.D.Ill.2006); *In re Barraza,* 346 B.R. 724 (Bankr.N.D.Tex.2006); *In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex.2006); *In re Walker,* 2006 WL 1314125 (Bankr. N.D.Ga.). *See also,* Wedoff, *Means Testing in the New § 707(b),* 79 Am. Bankr. L.J. 231.

All of the courts agree that BAPCPA provides that the Local Standards are to be used as a minimum allowance, trumped by the actual expense if the actual expense is higher. Here, the applicable Local Standard amount is $471.00. Form B22A

---

1. The debtor seeks to exclude from her income computation a bonus that she received within the six month look back period as an exceptional circumstance under 11 U.S.C. § 707(b)(2)(B)(i). The "exceptional circumstance" exclusion is available in appropriate situations to rebut a presumption of abuse resulting from the Form B22A calculations. Because the presumption does not arise in light of the ruling on the UST's objections, the Court does not consider the debtor's claim.

accommodates the statutory mandate by accounting for an actual expense from 0 and the Standard amount, and reconciling the two to apply the higher expense as the allowable expense. With this information alone, a straightforward reading of 11 U.S.C. § 707(b)(2)(A)(ii) is that "the debtor's applicable expense amounts specified under the ... Local Standards" is the higher of the Standard amount or actual expense. This does not change where the actual expense is 0.

Those courts that disallow the Local Standard amount where no debt is owing on a debtor's owned vehicle, all do so by using IRS Manual § 5.15.1.7 (05–01–2004) in the analysis. ("If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.") In taking this IRS directive into consideration, those disallowing courts conclude that where there exists no car payment, "the debtor's applicable expense amounts specified under the ... Local Standards" (11 U.S.C. § 707(b)(2)(A) must be 0).[2]

The IRS directive has no application to determining "the debtor's applicable expense amounts specified under the ... Local Standards" as part of the means test. IRS use of the Local Standards is the opposite of that mandated by BAPC-PA, that is the applicable IRS allowed amount is either the Standard amount or actual amount, whichever is lower.

*Maximum allowances for housing and utilities and transportation, known as the Local Standards, vary by location. Unlike the National Standards, the taxpayer is allowed the amount actually spent or the standard, whichever is less.* See, IRS Website http://ww w.irs.gov/individuals/article/0,,id=96543,00.html. Of

course, the IRS directives reflect IRS policy to disallow any Standard amount where the actual expense is 0. How could they instruct otherwise? But, 11 U.S.C. § 707(b) mandates otherwise. The Code requires that the applicable expense amounts under the Local Standards are the higher, not the lower, of the actual and Standard amounts. There exists no statutory basis that this Court is aware of that allows a different result where the actual expense is 0. The argument that the statute should be read to disallow the Standard amount where no actual debt exists at filing largely rests on the assertion that such best serves the gate-keeping purpose of 11 U.S.C. § 707(b). But, as discussed below, Congress locked the courts out of the means test, and judicial discretion has no role in it.

*The Appropriate Housing Expense.*

 The parties agree that at filing the debtor owed $133,913.00 secured by a mortgage on her homestead, that she intended to abandon the property, and that as of the hearing date on UST's motion the property was in foreclosure. Monthly mortgage payments were $1,425.25. The Local Standard allowance amount is $1,033.00. The UST argues that these facts require that the debtor claim the lower Standard amount rather than the higher actual expense that the debtor claimed. Again, there is no statutory basis for this argument. *In re Walker*, 2006 WL 1314125 (Bankr.N.D.Ga.).

The argument is largely based on appeals to fairness and statutory interpretation that best serves the purposes of 11 U.S.C. § 707(b) as a gate-keeper to the sanctuary of Chapter 7. That is, to keep debtors who can afford to pay a portion of

---

**2.** The same courts, however, apparently would recognize the Standard amount as the allowable amount if the actual monthly ex-

pense is any amount above 0, but below the Standard amount, even if the actual expense be $1.00.

their debts out. But, concepts of fairness involve equitable principles and judicial discretion. Congress had neither of these in mind in enacting the means test in 11 U.S.C. § 707(b). The means test presents a backward looking litmus test performed using mathematical computations of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt. Congress has already determined the fairness of application of the means test, and a major objective of the legislation was to remove judicial discretion from the process.

■ Even if otherwise, where could one begin to consider the means test provisions of 11 U.S.C. § 707(b) under equitable principles and fairness toward serving the gate-keeping purpose of § 707(b)? A debtor with a $7,000.00 monthly mortgage payment and $2,000.00 in combined vehicle payments on a Hummer and Lexus escapes the presumption of abuse. Another debtor in the same locale with a mortgage payment $392.00 per month more than the Local Standard monthly housing allowed amount of $1,033.00, who plans to give up the home post-petition, and who owns a modest older vehicle debt free, should be denied the actual housing cost at filing deduction and the car ownership expense $427.00, suffering the presumption of abuse? How does the first example serve the gate-keeping purpose of keeping debtors who can afford to pay a portion of their debts out of Chapter 7? How does the second example? Not so apparent. What to do? Nothing.[3] Application of the means test is not left by the BAPCPA legislation to judicial discretion.

**3.** Actually, the means test is not the only way to keep a debtor out of Chapter 7. 11 U.S.C. § 707(b)(3) allows for a court to find abuse sufficient to dismiss a Chapter 7 case where a finding is made that the case was filed in bad faith or in consideration of "the totality of the

## III

Accordingly, based on the reasons discussed, proper application of the means test does not result in a presumption of abuse in the debtor's case and UST's motion to dismiss is **DENIED.**

circumstances," on which the provision provides little guidance except in cases involving the rejection of personal services contracts. See: *In re Pennington,* 348 B.R. 647 (Bankr. D.Del.2006). The UST does not seek dismissal under this provision.