**In re Stacey BENEDETTI, Debtor.**

**No. 06–13003–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

July 13, 2007.

Timothy S. Kingcade, Esq., Miami, FL, for Debtor.

**MEMORANDUM DECISION AND ORDER OVERRULING THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S INCLUSION OF PAYMENT ON SURRENDERED VEHICLE IN MEANS TEST CALCULATION**

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court for hearing upon the United States Trustee's ("UST") Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b) ("Motion to Dismiss") (DE # 22). In the Motion to Dismiss, the UST argues that: (1) Debtor should not be allowed to deduct payments on secured property that she intends to surrender; and (2) without those deductions, the presumption of abuse arises. The Court heard arguments from counsel, and directed the parties to submit post-hearing memoranda on the issue of whether Debtor may include in her means test calculation installment payments on a vehicle surrendered after the filing of her bankruptcy case. Upon consideration of the foregoing, and in light of the record before it, the Court concludes that the deduction of payments on collateral [which is intended to be surrendered after the filing of the petition] is allowed.

## STATEMENT OF JURISDICTION

The Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) & (b), 28 U.S.C. § 157(a) & (b), and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (B). The UST files the Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(2).

## STATEMENT OF APPLICABLE STATUTES AND RULES

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L.No. 109–8, 119 Stat. 37 ("BAPCPA") became effective on October 17, 2005.

One goal of BAPCPA was to prevent debtors from receiving a discharge under chapter 7 when they had disposable income that could be used to repay their creditors. *See In re Hardacre*, 338 B.R. 718, 725 (Bankr.N.D.Tex.2006) quoting 151 Cong. Rec. S2459, 2469–70 (March 10, 2005) (purpose and intent of BAPCPA is to ensure that those debtors who can pay their debts do so).

BAPCPA attempts to accomplish this goal through 11 U.S.C. § 707. Section 707 provides for a "means test" to determine whether debtors have the means to pay creditors. The first step in the calculation is to determine whether a debtor's annual current monthly income pursuant to section 101(10A) ("CMI") is lower than the state median income for a household of the same size. If a debtor's CMI is below the median, the debtor "passes" the test and may proceed in a Chapter 7 case. 11 U.S.C. § 707(b)(7).

If the debtor's CMI is greater than the state median income, then the debtor must go through the income analysis of section 707(b)(2) by completing and filing a State-ment of Current Monthly Income and Means Test Calculation—Form B22A (the "Official Form B22A"). In the Official Form B22A, a debtor's CMI is reduced by expenses allowed in section 707(b)(2)(A)(ii)-(iv) to determine how much of the debtor's monthly income is available to creditors. A debtor "passes" the means test if the debtor has less than $100 per month in monthly net income, as more fully described in section 707(b)(2)(A).[1] If a debtor's Official Form B22A shows that the debtor has enough disposable income to pay creditors pursuant to the formula of section 707(b)(2)(A), the debtor does not pass the means test, and the "presumption of abuse" arises.[2]

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7.[3] The UST seeks dismissal of Debtor's bankruptcy case as an abuse of the provisions of Chapter 7 pursuant to 11 U.S.C. § 707(b)(1) based on the presumption of abuse arising under 11 U.S.C. § 707(b)(2).

---

1. Section 707(b)(2)(A)(i) of the Bankruptcy Code requires the court to presume that a debtor's Chapter 7 filing is abusive "if the debtor's current monthly income reduced by amounts determined under clauses (ii), (iii), and (iv) [of § 707(b)(2)(A) ], and multiplied by 60 is not less than the lesser of—
 (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
 (II) $10,000."
 Stated differently, if after deducting all allowable expenses from a debtor's current monthly income, the debtor has less than $100 per month in monthly net income (*i.e.*, less than $6,000 to fund a 60 month plan), the filing is not presumed abusive. If the debtor has monthly income of more than $166.67, or $10,000 to fund a sixty month plan, the filing is presumed abusive. Finally, if the debtor has between $101 and $166 per month, the case will be presumed abusive if that sum, when multiplied by 60 months, will pay 25% or more of the debtor's non-priority unsecured debts.

2. The presumption of abuse may be rebutted by a debtor by showing special circumstances pursuant to section 707(b)(2)(B).

3. Debtor in this case is an individual with primarily consumer debts. Consumer debts are those "incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. section 101(8). The majority of Debtor's indebtedness is credit card debt, and is therefore consumer in nature. *See In re Stewart*, 175 F.3d 796, 808 (10th Cir.1999) ("primarily" in the context of section 707(b) means consumer debt exceeding fifty percent of the total debt.) Debtor also acknowledges the nature of her debt to be "consumer/non-business" on the voluntary petition.

The deduction at issue in this matter is in section 707(b)(2)(A)(iii) which allows a deduction for the average monthly payment on secured debt for "all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition."

## STATEMENT OF FACTS

1. On June 30, 2006, Stacey Benedetti ("Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code"). Debtor's petition is subject to the BAPC-PA.[4]

2. On the date of filing, Debtor filed her Schedules, Statement of Financial Affairs, Statement of Intention, and her Official Form B22A.

3. Debtor is a single woman, who listed two leased vehicles in schedule B: a 2005 Audi A4 Cabriolet, 2 Door ("Audi"), and a 2006 BMW–Z–4 ("BMW").

4. On her Official Form B22A, Debtor calculated her CMI in the amount of $5,509.86. Thereafter, she deducted a number of expenses from her CMI, including $1,052.55 on Line 42 for "future payments on secured claims", $1,017.31 of which relates to the monthly lease payments for the Audi in the amount of $642.31, and the monthly lease payments for the BMW in the amount of $375.00.

5. Pursuant to section 704(b)(1) of the Bankruptcy Code, the UST filed a statement that Debtor's case is presumptively abusive under section 707(b) (the "Statement of Presumed Abuse"), noting that:

a. On Schedule B, Debtor disclosed an interest in the Audi and the BMW;

b. On Schedule G, Debtor listed the lease for the Audi and indicated her intent to surrender same;

c. Debtor's Statement of Intent indicated her intent to reaffirm the BMW lease, but to surrender the Audi;

d. At the § 341 Meeting of Creditors held on August 1, 2006, the Debtor testified that she was surrendering the Audi.[5]

6. Based upon the foregoing information, the UST eliminated Debtor's claimed expense relating to the property. Debtor intended to surrender, and adjusted other expenses.[6]

7. The UST subsequently filed her Motion to Dismiss on September 7, 2006 (DE # 22).

8. At the hearing on the UST's Motion to Dismiss, the Court took the dispositive issue in this matter under advisement, that is, whether Debtor may include in the means test calculation the installment payments on the Audi she surrendered after filing the petition commencing this case. The UST's Motion to Dismiss with respect to all other objections was continued pending a resolution of the surrender issue.

## ISSUE

The UST objects to Debtor including the installment payments on the surrendered

---

4. The BAPCPA is effective as to cases filed on or after October 17, 2005.

5. In fact, post-petition, on September 6, 2006, *VW Credit, Inc.* filed its Notice of Termination of Automatic Stay By Operation of Law with regard to the Audi. (DE # 23).

6. In her Motion to Dismiss, the UST objected to other expenses that Debtor included in her

Official Form B22A. For the purposes of this decision and in formulating her determination that the presumption of abuse arises, the UST is not considering whether those additional expenses are properly allowed. The only expense presently at issue is the payments on the surrendered Audi. The remaining UST's objections are continued pending a resolution of the surrender issue.

Audi in her means test form because, as the UST argues, the plain language of 11 U.S.C. § 707(b)(2)(A)(iii), "scheduled as contractually due to a secured creditor in each of the 60 months following the date of the petition", does not allow Debtor to deduct payments on secured debt which she is not making post-petition. To allow such deduction would be contrary to the plain meaning and purpose of the statute.

On the other hand, the Debtor argues that the expense portion of the means test requires the Court to determine what payments are "secured" and "contractually due" as of the petition date, without any reference to post-petition events. The Debtor asserts the means test is an historic, not futuristic, mathematical test which uses historical data, with no qualification, condition or exception for situations such as the surrender of collateral.

Pursuant to section 707(b)(2), the presumption of abuse arises in this case if Debtor's deduction of the payments on the surrendered Audi in her Official Form B22A is disallowed, because the Debtor would have approximately $642.00 per month in disposable income. Debtor does not dispute that the presumption arises if she is not allowed to deduct the payments on the Audi.

### ANALYSIS

The provisions of 11 U.S.C. § 707(b)(2)(A) guide the Court in its determination of what constitutes reasonably necessary expenses which may be deducted from a debtor's current monthly income for purposes of arriving at the debtor's disposable income. Section 707(b)(2)(A)(iii) provides, in pertinent part, that:

> [t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. . . .

 The parties agree that the determination of what amounts may be deducted from CMI under this provision begins with the language of the statute itself. *In re T.H. Orlando, Ltd.*, 391 F.3d 1287, 1291 (11th Cir.2004); *see, In re Anderson*, 275 B.R. 922, 925 (10th Cir.BAP2002) citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); and *Dalton v. I.R.S.*, 77 F.3d 1297, 1299 (10th Cir.1996); " 'The plain meaning of legislation should be conclusive, except in the rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *In re Paschen*, 296 F.3d 1203, 1207 (11th Cir.2002) quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *see In re Carbaugh*, 278 B.R. 512, 522 (10th Cir.BAP2002). In determining the plain meaning, a court "gives effect to every clause and word of [the] statute." *Negonsott v. Samuels*, 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) quoting *Moskal v. U.S.*, 498 U.S. 103, 109–110, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). As the Supreme Court has stressed, "statutory construction is a 'holistic endeavor.' " *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) quoting *United Sav. Assn. of Texas v. Timbers Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). "In interpreting one part of a statute, 'we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " *In re Welzel*, 275 F.3d 1308, 1317 (11th Cir.2001) quoting *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 44

L.Ed.2d 525 (1975); *see also FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)(courts must "interpret the statute as a symmetrical and coherent regulatory scheme" and "fit, if possible, all parts into a harmonious whole.").

However, by "simply" interpreting the "plain" language of the statute, two lines of cases have emerged on the issue of whether a secured debt for collateral that a debtor intends to surrender is "scheduled as contractually due" for purposes of the means test under 11 U.S.C. § 707(b)(2)(A)(iii)(I). The cases of *In re Walker,* 2006 WL 1314125 (Bankr.N.D.Ga. 2006), *In re Oliver,* 2006 WL 2086691 (Bankr.D.Ore.2006) and *In re Hartwick,* 352 B.R. 867 (Bankr.D.Minn.2006) found the statute permits debtors to include payments on surrendered collateral in the means test calculation. The *Walker* court allowed the expense, ruling that the plain meaning of the phrase "scheduled as contractually due" *does* permit debtors to reduce CMI for payments owed pursuant to an underlying contract, regardless of whether the debtor has indicated an intent to surrender the property.2006 WL 1314125 at *3–4.

The cases of *In re Skaggs,* 349 B.R. 594 (Bankr.E.D.Mo.2006), *In re Love,* 350 B.R. 611 (Bkrtcy.M.D.Ala.2006), *In re Crittendon,* 2006 WL 2547102 (Bankr.M.D.N.C. 2006), *In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C.2006) and *In re Harris,* 353 B.R. 304 (Bankr.E.D.Okla.2006) all found that the secured debts for surrendered collateral are *not* included in the means test calculation.

■ Upon review of all the cases and the language of the applicable statute itself, the Court is persuaded by the thorough and well-reasoned opinion of United States Bankruptcy Judge W. Homer Drake, Jr. in *Walker,* and agrees that the plain meaning of the phrase "scheduled as contractually due" found in section 707(b)(2)(A)(iii) of the Bankruptcy Code entitles the Debtor to deduct from current monthly income the average payments on debts secured by collateral which the Debtor intends to surrender post-petition. The words in 11 U.S.C. § 707(b)(2)(A)(iii), when read together as a whole, lead the Court to believe that a secured debt "scheduled as contractually due to secured creditors" does not require, as a prerequisite to allowing the deduction, that those debts *actually* be paid "in each month of the 60 months following the date of the petition." Section 707(b)(2)(A)(iii) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, without regard to whether the property securing the debt is necessary and without regard to whether the payments are actually made. *See* Wedoff, *Means Testing in the New § 707(b),* 79 Am. Bankr.L.J. 231 ("for purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats and vacation homes would be deductible.").

The UST relies on the statutory scheme of BAPCPA to argue that, in calculating disposable income, the Court should not allow a deduction for future payments that are not actually paid. The UST contends the statute does not allow the deduction from CMI of the $642.31 amount for the Audi, because the Debtor stated her intent to surrender the Audi, has actually done so as of the date of the UST's Motion to Dismiss, and will not make any payments thereon in any of the 60 months following her petition date. The UST argues that the means test provides a mechanism for assessing a debtor's ability to repay his or her debts in the 60 months following the petition date, and calculates whether a debtor's average monthly income, less al-

lowable expenses, would result in sufficient disposable income in the five years after the bankruptcy filing such that the court should presume that the case is abusive. She concludes that, in calculating a debtor's disposable income in the months after filing, the means test was not intended to include amounts that a debtor *will not pay* to secured creditors in that same 60 month period.

■ The UST's position hinges on legislative intent and policy and is based upon notions of fairness and statutory interpretation which she believes best serves the purposes of 11 U.S.C. § 707(b) "as a gatekeeper to the sanctuary of Chapter 7. That is, to keep debtors who can afford to pay a portion of their debts out." *Hartwick,* 352 B.R. at 869. However, United States Bankruptcy Judge Dennis D. O'Brien's response to this argument in *Hartwick* is fitting:

> [C]oncepts of fairness involve equitable principles and judicial discretion. Congress had neither of these in mind in enacting the means test in 11 U.S.C. § 707(b). The means test presents a backward looking litmus test performed using mathematical computation of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt. Congress has already determined the fairness of application of the means test, and a major objective of the legislation was to remove judicial discretion from the process.

Thus, if Congress intended to limit secured debt payments contractually due from debtors on the petition date to those where actual future payments will be made in Form B22C calculations, it knew how to do so, as reflected by the inclusion of the terms "actual monthly expenses" and "actual expenses" elsewhere within 11 U.S.C.

§ 707(b)(2)(A)(ii)(I) and (II). *Oliver,* 2006 WL 2086691.

■ The Debtor emphasizes that section 707(b)(2) computes disposable income by looking backward from the filing date to the debtor's income and expenses in the six months prior to filing. *Walker,* 2006 WL 1314125 at *5 ("Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the passage of time or with changes in the debtor's lifestyle. This choice indicates an intent to apply the means test to measure the debtor's need for chapter 7 relief at the time of filing, without regard to future events...."). *See also In Re Hartwick,* 352 B.R. at 867 (agreeing with *Walker* in that the means test presents a backward looking test). Although the court in *Love* disagreed with *Walker* and held that the language of section 707(b)(2)(A)(iii) is forward looking and the term "scheduled payments" indicates a forecast of future events and not historic data, *Love,* 350 B.R. at 613–14, the Debtor points out that comparing historical income data with futuristic expenses is "nonsensical". The Court agrees with the Debtor. *See In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C.2006). "Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the passage of time or with a change in the debtor's lifestyle. This choice indicates an intent to apply the means test to measure the debtor's need for Chapter 7 relief *at the time of filing,* without regard to future events or relief that would be available under Chapter 7." *Walker,* 2006 WL 1314125 at *5 (emphasis added). *See* 11 U.S.C. § 707(b)(2)(A)(ii) and (iii).

Using a "snapshot" view of the Debtor's expenses on the date of filing makes sense

in the context of a Chapter 7 case. The application of the provisions of section 707(b)(2) involves an evaluation of the Debtor's financial condition on the petition date such that a post-petition surrender of collateral is irrelevant and inconsequential. The means test is statutorily defined as a mechanism for determining whether a presumption of abuse arises in a Chapter 7 case, with reference to expenses "as in effect on the date of the order for relief." 11 U.S.C. § 707(b)(2)(A)(i) and (ii). The test has been described as a "snapshot" on the petition date rather than an evolving progress report on the Debtor's finances. *See In re Nockerts,* 357 B.R. 497 (Bankr. E.D.Wis.2006). Thus, as long as the Debtor, at the time she filed her petition, was contractually obligated to pay the secured creditor on the Audi, in some or all of the sixty months subsequent to the petition date, and as long as no other event occurred to relieve the Debtor of her contractual obligations to make the scheduled payments, the payments were still "scheduled as contractually due" on the date of the petition, and the Debtor is therefore allowed to deduct the average of those payments.

### CONCLUSION

Like beauty, the plain meaning of BAPCPA is in the eye of the beholder, creating a body of case law with opposing conclusions regarding whether section 707(b)(2)(A)(iii) allows a debtor to reduce his or her CMI on account of payments that may never be made. The Court finds that the plain meaning of the statute requires debtors to use the expenses in effect as of the petition date, allowing them to deduct average monthly payments for secured debts, despite the fact that they have surrendered or will surrender the collateral securing those debts. *See* 11 U.S.C. § 707(b)(2)(A)(ii) and (iii). In determining which payments should be averaged for the deduction, the Court determines how many payments are owed under the contract for each secured debt at the time of filing. "This interpretation gives meaning to the word 'scheduled,' which implies the possibility that the payments may not be made as required under the contract. . . ." *Walker,* 2006 WL 1314125 at *4. Accordingly, the Court will allow, for purpose of the means test calculation, a deduction from CMI for amounts that would have been due, but which Debtor may not pay, to secured creditors on account of property she intends to, and in fact does surrender after the petition date. It is hereupon

**ORDERED AND ADJUDGED** that the UST's Motion is **DENIED IN PART** as follows:

1) Debtor's lease payments on the surrendered Audi in her Official Form B22A are allowed.

2) The UST's Motion is reset for hearing on August 9, 2007 at 11:30 AM in Courtroom 1410, 51 SW First Ave., Miami, FL to consider the remaining objections in the Motion.