**In re David MAYA and Susie B. Maya, Debtors.**

**No. 07–01561–B7.**

United States Bankruptcy Court, S.D. California.

Aug. 14, 2007.

Thomas M. Lockhart, Lockhart and Britton, La Mesa, CA, for Debtors.

## AMENDED ORDER ON MOTION OF UNITED STATES TRUSTEE TO DISMISS

PETER W. BOWIE, Chief Judge.

The United States Trustee has moved to dismiss this case under both subsections (b)(2) and (b)(3)(B) of 11 U.S.C. § 707. At the center of the motion is whether debtors can include in their "Means Test" calculation payments they would otherwise owe on property they intend to surrender. The United States Trustee says they should not be able to claim those sums as expenses, and if they cannot then a "presumption of abuse" under § 707(b)(2) arises. Alternatively, the United States Trustee urges the case should be dismissed under the "totality of circumstances" under § 707(b)(3) because once debtors surrender the property they will have income that could be used to pay creditors in a Chapter 13 plan, so allowing them to go forward in a Chapter 7 would result in an abuse under the Bankruptcy Code, as amended.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

### Discussion

Section 707(b)(1) provides in relevant part:

> After notice and a hearing, the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707 then sets out a statutory scheme which provides for a calculation that either results in a presumption of abuse, or not. If the presumption arises, it is almost irrebuttable, and requires dismissal unless the debtor agrees to conversion to chapter 11 or 13. If the presumption does not arise, the filing may still be subject to dismissal under § 707(b)(3) under a "totality of the circumstances" analysis.

In conducting the § 707(b)(2) analysis, certain listed expenses are subtracted from the debtor's "current monthly income" (which is a defined phrase) to yield a net number. That number is then matched against a formula to ascertain whether the presumption of abuse arises. As might be imagined, the higher the amount of expenses deducted, the lower the net number and the greater the likelihood that the presumption of abuse will not arise. Conversely, the lower the amount of expenses that can be deducted, the higher the net number will be and the greater the likelihood the presumption of abuse will arise.

■ For purposes of the present case, and many cases like it, § 707(b)(2)(A)(iii) provides in pertinent part:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. . . .

Courts that have wrestled with similar motions have focused on the phrase "scheduled as contractually due" while grappling with whether to allow a debtor to deduct contractually due payments when the debtor intends to surrender the collateral and not make any further payments. They have debated the meaning of the word "scheduled", apparently in an effort to pick a date post-petition at which to measure what secured debts remain "contractually

due". Certainly, it seems to strain credulity that a debtor ought to be able to deduct expenses he or she has no intent to pay, and especially when a debtor has filed a formal Statement of Intention under 11 U.S.C. § 521 expressing the intent to surrender that property.

 Notwithstanding that notion, the Court is persuaded that for purposes of the "means test" analysis of § 707(b)(2) the appropriate measuring point in time is the petition date. See *In re Walker*, 2006 WL 1314125 (Bankr.N.D.Ga.2006); *In re Littman*, 370 B.R. 820 (Bankr.D.Idaho 2007); *In re Wilkins*, 370 B.R. 815 (Bankr. C.D.Cal.2007); *In re Haar*, 360 B.R. 759 (Bankr.N.D.Ohio 2007); *In re Kelvie*, 372 B.R. 56 (Bankr.D.Idaho 2007); *In re Benedetti*, 372 B.R. 90 (Bankr.S.D.Fla.2007). First, the Court is persuaded the statutory scheme of the "means test" is intended to be a mechanical or formulaic calculation, as illustrated by using historical income information and government agency median allowances. It has to be as of a point in time, which almost always is the petition date. One case, *In re Singletary*, 354 B.R. 455 (Bankr.S.D.Tex.2007), says the measuring date should be the date of filing the motion to dismiss. Why not the date the motion is actually heard, or the date the schedules are actually filed, or the date by which the intent to surrender must be performed as required under § 521(a)(2)? Each of those is a floating variable date, while eligibility under the Bankruptcy Code for many things is measured as of the petition date. No good reason has been proffered for holding otherwise, except for the obvious argument that secured property usually won't have been surrendered by that date.

 The second step is that if the measuring date is the petition date, then obligations that are "contractually due" on that date are obligations to be included in the calculation of expenses even though

the debtor has no intent to pay them. They are nevertheless "contractually due" within the meaning of § 707(b)(2)(A)(iii) because simply filing a Statement of Intention under § 521 does nothing to relieve a debtor legally of any obligation under the terms of a promissory note on supporting trust deed or title document, as a member of courts have observed.

So, for purposes of analysis under § 707(b)(2) to determine whether a presumption of abuse arises, a debtor may deduct the amortized monthly payments under § 707(b)(2)(A)(iii) even though the debtor intends to surrender the property because, at the time of filing, those payments are still "contractually due". Any other holding creates great vagaries of timing, from the date of filing of the Statement of Intention (can be 30 days or more, if extended, after filing, or any time within the first 30 days), to the date to perform under § 521(a)(2) (possibly extended), to the possible scenarios discussed in relation to the *Singletary* decision. Many courts have agreed with this Court's conclusion, and some have shared pieces of the reasoning. In addition to those cases already cited for using the petition date, see also *In re Galyon*, 366 B.R. 164 (Bankr. W.D.Okla.2007); *In re Mundy*, 363 B.R. 407 (Bankr.M.D.Pa.2007); *In re Nockerts*, 357 B.R. 497 (Bankr.E.D.Wis.2006). It is with some dismay that the Court has to look past the results in cases like *In re Ray*, 362 B.R. 680 (Bankr.D.S.C.2007); *In re Skaggs*, 349 B.R. 594 (Bankr.E.D.Mo. 2006); *In re Harris*, 353 B.R. 304 (Bankr. E.D.Okla.2006), but the Court is unable to find a way to those results while keeping faith with the plain meaning and statutory structure of § 707(b)(2).

In their "means test" analysis debtors have included the mortgage payments and expenses associated with both pieces of real property. They have also included

the payment amount their adult daughter pays on the vehicle she uses. It appears uncontroverted that debtors are obligated on the promissory note for the vehicle, but a question arises whether the debt is secured or unsecured as to the debtors because they apparently do not possess the collateral. It would seem, however, that if debtors choose to claim the vehicle as an expense they must also show the daughter's payments as income in some form.

With a reservation as to whether the one vehicle debt is secured because debtors may use their "contractually due" payments on secured debts that existed at the time of filing of the petition in their "means test" calculation even though they intend to surrender them it appears the presumption of abuse does not arise. Therefore, the motion to dismiss under § 707(b)(2) should be, and hereby is denied.

### § 707(b)(3)

Section 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

■ A central issue under § 707(b)(3)(B) is the role of a debtor's ability to pay. In the pre-BAPCPA days in the jurisdiction of the Ninth Circuit ability to pay was a ground sufficient unto itself to support dismissal for "substantial abuse". *In re Kelly,* 841 F.2d 908 (9th Cir.1988). BAPCPA lowers the statutory standard to "abuse", and a number of courts that have considered the role of ability to pay since BAPCPA became effec-

tive agree it may support dismissal. *In re Pak,* 343 B.R. 239 (Bankr.N.D.Ca.2006); *In re Henebury,* 361 B.R. 595 (Bankr. S.D.Fla.2007); *In re Pennington,* 348 B.R. 647 (Bankr.D.Del.2006); *In re Mundy,* 363 B.R. 407 (Bankr.M.D.Pa.2007). But see *In re Nockerts,* 357 B.R. 497 (Bankr.E.D.Wis. 2006) where that Circuit's law pre-BAPCPA was different from *Kelly.* This Court agrees with the reasoning in *Pak,* and *Henebury,* and concludes that ability to pay may support dismissal under § 707(b)(3)(B) after reviewing the totality of a debtor's financial circumstances.

■ Debtors argue, at least implicitly, that they have no more ability to pay under a § 707(b)(3)(B) analysis than they did under § 707(b)(2) because the measuring point is still the date of the petition and the debtors can still use the "contractually due" payments in assessing their "financial situation". The Court disagrees. Perhaps the clearest signal that Congress intended courts to consider post-petition events under § 707(b)(3)(B) is the parenthetical language in the statute itself: "(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse." Courts that have considered post-petition events or circumstances in a § 707(b)(3)(B) analysis include *In re Henebury, supra; In re Pennington, supra; In re Mundy, supra; In re Pak, supra.*

■ Based on the foregoing, the Court finds and concludes that for purposes of § 707(b)(3)(B) debtors may not rely on payments and expenses for property they intend to, and do surrender post-petition. In scrutinizing debtors' "financial situation", the Court also finds and concludes that the payments the adult daughter makes on the vehicle in her possession

should not be included as an expense of the debtors. Alternatively, if the expense is included, then the daughter's payments for the loan, operation, insurance and maintenance of the vehicle should be included on the income side of the analysis.

The United States Trustee's Bankruptcy Analyst submitted a supplemental declaration after debtors disclosed their current income information and rent expenses. In it he calculated the monthly disposable income available to debtors to pay creditors on a monthly and five year basis. The issue for the Court under the totality of circumstances test is whether allowing the debtors relief under Chapter 7 would result in an abuse. Under the "means test" analysis of § 707(b)(2), "[i]f the debtors have monthly net income of $166.67 or more (i.e., at least $10,000 to fund a 60–month plan), the filing is presumed abusive." *In re Ray*, 362 B.R. 680, 681 (Bankr.D.S.C.2007). Here, the Analyst has calculated that debtors have at least $733.72 of monthly disposable income after making adjustments on the surrender of the houses, associated expenses, mortgage interest and real property tax deductions, and on the daughter's vehicle. That is over $44,000 over a 60 month period. The Court finds and concludes that allowing debtors relief under Chapter 7 with that much monthly disposable income would constitute an abuse under the totality of circumstances of the debtors' financial situation.

■ The Court has briefly wrestled with the fact debtors would not be eligible for Chapter 13 because they exceed the debt ceilings. Chapter 11 cases are more expensive, and the administrative costs would reduce the funds to be distributed to creditors. The Court is of the view that the funds that would reach creditors is a relevant consideration in determining whether an abuse would occur if the debtors were allowed to continue under Chapter 7 under the totality of the circumstances test. Here, while the consideration is relevant, the amount of monthly disposable income available to debtors is sufficient to make a meaningful distribution to unsecured creditors even if greater administrative expense is also incurred. The core question is whether relief under Chapter 7 would constitute an abuse. The Court finds that it would.

### One Final Issue

■ Debtors in their Opposition to the motion threw in a paragraph that reads:

> Finally, the UST does not dispute the Debtor's right to claim the secured payments, if they were to retain the properties. Thus, the UST's argument admits to treating debtors similarly situated in a different manner. This approach would appear to violate the Debtors' rights to equal protection and due process.

In the Court's view, the argument proceeds from a false premise. It presupposes that debtors who surrender property are similarly situated to those that retain it. Of course they are not similarly situated. Their only similarity is they are both debtors. The United States Trustee has responded more thoroughly. The Court rejects the argument made by debtors. The United States Trustee has appeared and taken a position on the merits of the matter and 28 U.S.C. § 2403 has been satisfied.

### Conclusion

For all the foregoing reasons, the Court concludes that the United States Trustee's Motion to Dismiss under § 707(b)(2) should be and hereby is denied. The Motion to Dismiss under § 707(b)(3)(B), however, should be and hereby is granted.

Accordingly, debtors shall have fifteen (15) days from date of entry of this Order

within which to convert this case to one under another chapter of the Bankruptcy Code. If they fail to do so, then on the sixteenth (16th) day after entry of this Order the case shall be dismissed.

IT IS SO ORDERED.