**In The Matter of Paul E. HUBBARD, Annemarie U. Hubbard, Debtors.**

No. 06–11190.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Oct. 12, 2007.

Randall Brian Stiles, Stiles & Boughter LLP, Fort Wayne, IN, for Debtors.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

As this court and others have repeated countless times, the 2005 Bankruptcy Reforms made significant changes to the Bankruptcy Code and to the bankruptcy process. One of the centerpieces of those reforms is the "means test" of § 707(b). Through it, Congress sought to replace the highly discretionary, totality of the circumstances, review associated with the previous inquiry into whether granting relief to a debtor would constitute "a substantial abuse" with a more rigid framework, based upon uniform standards, that would determine whether a filing was now simply abusive. *See e.g., In re Hartwick,* 373 B.R. 645, 648–649 (D.Minn.2007); *In re Benedetti,* 372 B.R. 90, 96 (Bankr.S.D.Fla.2007); *In re Farrar–Johnson,* 353 B.R. 224 (Bankr.N.D.Ill.2006); *In re Hardacre,* 338 B.R. 718, 720–721 (Bankr.N.D.Tex.2006). Congress did so by applying the national and local standards that the Internal Revenue Service had developed, in order to assist it in determining how much a taxpayer might be able to pay towards delinquent taxes for the purpose of arranging some type of payment plan, into the statutory abuse inquiry. This has come to be called the means test. *See, In re Slusher,* 359 B.R. 290, 306–307 (Bankr.D.Nev.2007).

Despite the fact that the IRS standards and the means test both have a similar goal—attempting to determine how much an individual can pay creditors—they do not mesh well. For example, the same part of the statute that mandates the use of the IRS standards as the first step in determining a debtor's monthly expenses also states "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts," 11 U.S.C. § 707(b)(2)(A)(ii)(I); yet, the IRS standards, whose use was mandated only two sentences before this prohibition, contain line items designed to account for debts associated with the ownership or the lease of a home and motor vehicles. Thus, there seems to be a conflict between the statute

and the standards that Congress has mandated, because those standards contain expenses which Congress has excluded from this particular part of the calculation. The exclusion of debt from the first step of the means test analysis can be explained, at least in part, because debts are accounted for differently, at a subsequent stage of the analysis. Section 707(b)(2)(A)(iii) specifically addresses how secured debts are to be considered in the means test, and this includes debts with regard to the debtor's residence, vehicles or other property necessary for support and maintenance.[1] In light of this, one could say that the IRS standards for housing and vehicle ownership expenses should be ignored for bankruptcy purposes and replaced by the calculation produced by § 707(b)(2)(A)(iii) at that stage of the equation.[2] While that would be a satisfactory solution where the debtor owns its home or its vehicle and is making payments to creditors holding a liens upon that property, it would not account for debtors who lease their homes or their vehicles, and a pre-petition lease is just as much a debt as is a claim secured by a lien upon property of the debtor. *See*, 11 U.S.C. § 101(12), (5).

The challenges presented by the means test of § 707(b) are not limited to Chapter 7 cases. It also has a role to play in determining the amount that many Chapter 13 debtors must pay into their plans on account of unsecured claims. Pursuant to § 1325(b), a plan may not be confirmed over the objection of the trustee or an unsecured creditor unless a debtor devotes all of its disposable income, received during the life of the plan, "to make payments to unsecured creditors." 11 U.S.C. § 1325(b)(1)(B). In calculating what this "disposable income" is, a debtor is allowed to subtract, among other things, the amounts reasonably necessary for the maintenance and support of the debtor and its dependants. 11 U.S.C. § 1325(b)(2)(A)(i). For debtors having an income above the median income for their state, these expenses are to be calculated in accordance with § 707(b)(2). 11 U.S.C. § 1325(b)(3). Thus, through § 1325(b), the means test of Chapter 7 is incorporated into Chapter 13 and helps to determine the confirmability of a proposed plan.

The previous introduction brings us to the circumstances presented by the case now before the court, which is pending under Chapter 13 of the United States Bankruptcy Code. The trustee has objected to confirmation and contends that the plan does not fulfill the disposable income test of § 1325(b). The dispute has its origins in the fact the debtors own two

---

**1.** To calculate the monthly payment associated with secured claims, § 707(b)(2)(A)(iii) adds the amount of all the scheduled payments that are to come due during the five years following the petition, together with any additional payment necessary for the debtor to retain possession of its residence, motor vehicle and other property necessary for support, and divides the resulting total by sixty.

**2.** Doing so would avoid the problem presented where, for example, a debtor has but a single car payment yet to make as of the date of the petition. While that payment obviously needs to be taken into consideration in determining the debtor's ability to pay, to include it at the first step of the analysis where the

IRS standards come into play, rather than through § 707(b)(2)(A)(iii), artificially inflates the debtor's future expenses, by making it appear the payment will need to be made every month, instead of only once. Section 707(b)(2)(A)(iii) only allows 1/60 of the total payments that need to be made to be taken as a monthly expense, and so, for a debt that has a remaining term of less than sixty months, will yield a smaller amount. It would also avoid the argument, which is sometimes advanced, that a debtor is entitled to deduct both the IRS ownership expense and the average produced by the § 707(b)(2)(A)(iii) calculation. *See e.g. In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tex.2006).

motor vehicles which do not secure any claim. The vehicles are owned free and clear of any liens and the debtors make no monthly payments to any creditor or lessor on account of them. Despite this, in completing form B22C, the debtors have taken motor vehicle ownership expense deductions in the total sum of $803.00 a month, which is the local IRS standard for this area for two cars.[3] That deduction has, in turn, influenced the amount of their proposed plan payment to the trustee, $330.00 per month for sixty months. The trustee's objection argues that the motor vehicle ownership expense deduction is not permitted because the debtors have no motor vehicle ownership expense. The debtors, on the other hand, contend the deduction is perfectly proper. Consequently, the issue before the court is a legal one and presents the question of whether § 707(b) and § 1325(b) allow a debtor to claim the IRS motor vehicle expense deduction when it has no such expense.

This issue has hopelessly divided the nation's bankruptcy courts. In very broad terms, the dispute arises out of differing perceptions concerning the proper role of the IRS standards and the ownership expense components they contain. One group of decisions views it as an automatic allowance, the availability of which is determined simply by the number of vehicles, one or two, a debtor owns. *See e.g., In re Armstrong,* 370 B.R. 323 (Bankr. E.D.Wash.2007); *In re Zak,* 361 B.R. 481, 488 (Bankr.N.D.Ohio 2007); *In re Haley,* 354 B.R. 340, 343–44 (Bankr.D.N.H.2006); *In re Fowler,* 349 B.R. 414, 420 (Bankr. D.Del.2006); *Farrar–Johnson,* 353 B.R. 224. The other group of decisions sees the

deduction, not as an automatic allowance, but rather as a cap upon what the debtor is permitted to pay. *See e.g., Slusher,* 359 B.R. 290; *In re Dettman,* Case No. 06–30368, Decision dated Sept. 25, 2007 (Bankr.N.D.Ind.2007)(Dees, J.); *In re Harris,* 353 B.R. 304, 309–10 (Bankr. E.D.Okla.2006); *In re Lara,* 347 B.R. 198, 201 (Bankr.N.D.Tex.2006); *In re Oliver,* 350 B.R. 294, 301–02 (Bankr.W.D.Tex. 2006); *In re McGuire,* 342 B.R. 608, 613 (Bankr.W.D.Mo.2006). Although the dispute roils fiercely at the bankruptcy court level, very few appellate decisions have yet been issued, none of them at a circuit level.[4] The only two district courts to venture into these waters have both concluded that the deduction should be treated as a cap, and not an allowance, and therefore cannot exceed the amount of the payment required. *See, Fokkena v. Hartwick,* 373 B.R. 645 (D.Minn.2007); *In re Ross–Tousey,* 368 B.R. 762 (E.D.Wis.2007).

There is no easy way to resolve the conflict between what are really two irreconcilable points of view. Each faction claims to best represent the most appropriate reading of the statute, the legislative history, the intent of Congress, bankruptcy policy, fairness, equity, truth, justice, and the American way. Furthermore, given the number of decisions, articles, and commentaries on the issue, the dispute has matured to the point that there is little, if anything, new that can be said about it. As a result, unless an author wants to rehash something that has already been said innumerable times before, there is little left to do but choose which of the two divergent paths to follow and offer up a brief explanation of why. That is the road this author

---

**3.** The debtors have taken the ownership expense allowance for the Midwest Census Region in the amount of $471 for the first vehicle and $332 for the second vehicle.

**4.** The court recognizes that the issue is presently before the Seventh Circuit in *Neary v. Ross–Tousey,* Case No. 07–2503.

finds most appropriate. The litigants in this case and the readers of this decision already know the arguments, whether pro or con, very well and need no further education in that regard. The only information they lack is this court's position on the issue.

Having considered the various arguments bearing on the issue, the court concludes that the more appropriate position is the one that views the vehicle ownership expense as a cap rather than an automatic allowance. It clearly functions that way in the IRS standards themselves. For both the housing and the vehicle ownership expenses, the manual explains that "taxpayers will be allowed the local standard or the amount actually paid, whichever is less." Internal Revenue Service Manual, Financial Analysis Handbook, Pt. 5, ch. 15 § 5.15.1.7(4), available at http://www.irs.gov/irm/part5/ ch15s01.html# d0e182924. More specifically, when it comes to discussing transportation expenses the explanation states:

> If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense. Under ownership costs, separate caps are provided for the first and second car. Internal Revenue Service Manual, Financial Analysis Handbook, Pt. 5, ch. 15 § 5.15.1.7(4.B), available at http://www.irs.gov/irm/part5/ ch15s01.html# d0e182924.

It seems reasonable to approach the issue from the standpoint that, when Congress directed that the IRS would standards be used in order to help measure a bankruptcy debtor's expenses, it knew how those standards actually worked and it intended that the courts would use them in that way when it came to applying the means test. *Fokkena,* 373 B.R. at 650–651; *Slusher,* 359 B.R. at 309; *In re Howell,* 366 B.R. 153, 157 (Bankr.D.Kan.2007). Consequently, the court concludes that a debtor is not entitled to a transportation ownership expense unless it actually has such an expense, whether in the form of a lease payment or a payment on account of a secured claim. Since the entire purpose of the transportation ownership expense is to account for, and to limit, the amount a taxpayer/debtor is allowed to pay for a motor vehicle, this conclusion is consistent with the Congressional directive that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtors shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I). It is also consistent with the underlying purpose of a statute which is designed to determine how much a debtor should be able to pay its unsecured creditors. *Howell,* 366 B.R. at 157. In light of this purpose, it makes little sense to make that determination by allowing a deduction for an expense the debtor does not have. *Id.*[5]

The debtors' payment to the trustee has been calculated based upon the proposition that they are entitled to a deduction for the transportation ownership expense even though they have no car payments. Since neither § 707(b)(2) nor 1325(b)(3) permit

---

5. The means test form, Form B22 offers no insight into how the debate is to be resolved. It has been constructed in such a way that it can be used regardless of which interpretation of the statute one prefers, and neither the form nor the instructions that go with it provide much guidance as to when a debtor is entitled to a transportation ownership expense, as opposed to how many they may claim. *Slusher,* 359 B.R. at 306. Furthermore, even if the form did purport to answer the question one way or the other, it is the statute, not the form, which must control the disposition of the issue.

them to claim this expense, their proposed plan fails to comply with the disposable income test of § 1325(b). The trustee's objection to confirmation is sustained and confirmation of the currently proposed plan will be denied.