**In re Laci A. HOLMES, Debtor.**

**No. 3:07–4081–JAF.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 17, 2008.

Albert H. Mickler, Bryan K. Mickler, Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court upon the Trustee's Amended Objection to Confirmation of Debtor's Proposed Chapter 13 Plan. After a hearing held on December 11, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

### STIPULATED FACTS

On September 18, 2007, Debtor filed a petition under Chapter 13 of the Bank-

ruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). In her schedules, Debtor listed Argent Mortgage Company, LLC ("Creditor") as a secured creditor holding a second mortgage upon her homestead.[1] On September 20, 2007, Debtor filed an adversary proceeding pursuant to 11 U.S.C. § 506(a) to determine the value of Creditor's claim in regards to a second mortgage upon her homestead. On October 29, 2007, a default judgment was entered in favor of the Debtor and against the Creditor. The judgment valued the Creditor's claim as $0.00.

Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income reflects that the Debtor has an above-median income. Debtor is claiming a deduction in the amount of $317.86, from her current monthly income, for future payments on the stripped mortgage.

### CONCLUSIONS OF LAW

■ The issue before the Court is whether the Debtor can deduct payments for the second mortgage that has been stripped to $0.00 from her current monthly income. The Trustee's position is that pursuant to the disposable income requirements contained within § 1325(b)(1)(B), Debtor is not entitled to deduct the fictional payments. Conversely, Debtor contends that because the payments were "contractually scheduled" as of the petition date, that she may deduct them pursuant to § 707(b)(2)(A)(iii)(I).

Directly at issue in the instant case is the phrase "scheduled as contractually

1. Argent Mortgage Company, LLC is referred to in Debtor's proposed Chapter 13 Plan as Specialized Loan SVC, LLC.

2. Although "projected disposable income" is not defined under BAPCPA, "disposable in-

due" contained within § 707(b)(2)(A)(iii)(I), which provides as follows:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;

11 U.S.C. § 707(b)(2)(A)(iii)(I).

In considering how the phrase "scheduled as contractually due" should be applied, the Court will look to § 1325(b)(1)(B), which requires Chapter 13 debtors to pay all their "projected disposable income" into their plan.[2] In relevant part, § 1325(b)(1)(B) provides:

"If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."

11 U.S.C. § 1325(b)(1)(B).

Since BAPCPA became effective in October of 2005, the meaning of § 707(b)(2)(A)(iii)(I) has been highly contested and two polar opposite schools of thought have emerged. The two most commonly adopted approaches are typically referred to as the "snapshot" approach and the "future oriented" approach. The first line of cases reasons that the plain

come" means "current monthly income" received by the debtor less amounts reasonably necessary to be expended for the maintenance and support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2).

language of § 707(b)(2)(A)(iii)(I) was meant to create a "snapshot" of the debtor's finances as of the petition date and does not factor into consideration a debtor's future intentions. *In re Burmeister,* 378 B.R. 227 (Bankr.N.D.Ill.2007); *In re Hayes,* 376 B.R. 55 (Bankr.D.Mass.2007); *In re Benedetti,* 372 B.R. 90 (Bankr. S.D.Fla.2007); *In re Kelvie,* 372 B.R. 56 (Bankr.D.Idaho 2007); *In re Wilkins,* 370 B.R. 815 (Bankr.C.D.Cal.2007); *In re Kogler,* 368 B.R. 785 (Bankr.W.D.Wis.2007); *In re Longo,* 364 B.R. 161 (Bankr.D.Conn. 2007); *In re Mundy,* 363 B.R. 407 (Bankr. M.D.Pa.2007); *In re Hartwick,* 359 B.R. 16 (Bankr.D.N.H.2007); *In re Sorrell,* 359 B.R. 167 (Bankr.S.D.Ohio 2007); *In re Randle,* 358 B.R. 360 (Bankr.N.D.Ill.2006); *In re Walker,* 2006 WL 1314125 (Bankr. N.D.Ga.2006).[3] In a recent case out of Illinois, the bankruptcy court reasoned that Congress meant the disposable income calculation under BAPCPA to be mechanical and held that § 707(b)(2)(A)(iii)(I) is clear on its face in requiring deductions based on payments that are "contractually due." *In re Burmeister,* 378 B.R. at 231. Another bankruptcy court opined that, "[I]f Congress intended to limit secured debt payments contractually due from debtors on the petition date to those where actual future payments will be made ..., it knew how to do so." *In re Oliver,* 2006 WL 2086691, at *3 (Bankr.D.Or. June 29, 2006).

The second line of cases utilizes a "future oriented" approach, in which only those expenses which the debtor reasonably expects to pay over the sixty month period may be properly deducted. In re *Kalata,* 2008 WL 552856 (Bankr.E.D.Wis. Feb. 27, 2008); *In re Burden,* 380 B.R. 194 (Bankr.W.D.Mo.2007); *In re Spurgeon,*

378 B.R. 197 (Bankr.E.D.Tenn.2007); *In re McGillis,* 370 B.R. 720 (Bankr. W.D.Mich.2007); *In re Ray,* 362 B.R. 680 (Bankr.D.S.C.2007); *In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C.2006); *In re Love,* 350 B.R. 611 (Bankr.M.D.Ala.2006); *In re Harris,* 353 B.R. 304 (Bankr.E.D.Okla. 2006); *In re Skaggs,* 349 B.R. 594 (Bankr. E.D.Mo.2006). For reasons discussed *infra,* it is the position of this Court that the "future oriented" approach best conforms with Congress' intent when it reformed bankruptcy laws with the passage of BAPCPA.

Pursuant to 11 U.S.C. § 1325(b)(3) disposable income for above median debtors shall be determined by a debtor's "current monthly income," less amounts reasonably necessary "to be expended" as determined by § 707(b)(2)(A) and (B). As discussed above, some courts have viewed a debtor's finances as a "snapshot" and have applied a purely mechanical approach, which results in the debtor only being required to pay unsecured creditors the amount determined in Form B22C, without regard to the debtor's actual ability to pay. This Court, however, sees the "snapshot" approach as being directly at odds with § 1325(b)(1)(B) which requires a debtor to fund a plan with all of his or her disposable income. As one court that considered a similar issue as presented in the instant case accurately reasoned, projected disposable income should be viewed as a reflection of a debtor's "applicable or actual projected expenses allowed by the Means Test." *Edmunds,* 350 B.R. at 643. The court in *Edmunds* also held that because a debtor's plan represents a new contract with his or her creditors, deductions may only be taken for payments scheduled in

---

**3.** The majority of cases cited above, in which the "snapshot" approach has been adopted, have been within the context of a chapter 7 case. As the court in *Benedetti* opined, "a

snapshot view of the Debtor's expenses on the date of filing makes sense in the context of a Chapter 7 case." *In re Benedetti,* 372 B.R. at 96–97.

the chapter 13 plan. *Id.* The Court agrees and finds that a debtor's "projected disposable income" cannot be properly determined by a strict mechanical calculation of Form B22C.

In a Chapter 13 case, this Court looks to what is on the table at the time of confirmation.[4] As one of the main requirements in Chapter 13 is that a plan be funded with all of a debtor's disposable income, it would go against the very essence of Chapter 13 to allow a debtor to deduct an expense that is non-existent at the time of confirmation. Additionally, as it is the policy of this Court that arrearages as well as regular monthly payments on secured claims be paid through the Chapter 13 plan, a non-existent expense cannot be taken into account either logically or mathematically in the configuration of what a debtor's plan payments should be.[5] As the Court finds that Debtor is not entitled to claim a deduction under § 707(b)(2)(A)(iii)(I) for payments on her second mortgage that has been stripped to $0.00, her projected disposable income should be increased by $317.86, the amount of the omitted payment.[6]

▮ The Trustee also asserts that based upon Debtor's attempt to deduct the payments on the stripped mortgage the case should be dismissed for bad faith. Conversely, Debtor asserts that she was merely complying with the plain language of § 707(b)(2)(A)(iii)(I). Although the Court does not agree with Debtor's interpretation of § 707(b)(2)(A)(iii)(I), courts across the nation, as discussed *supra,* are split upon what the proper interpretation of the phrase "scheduled as contractually due" is. As there is no controlling precedent in the Eleventh Circuit and the issue was never previously addressed by this Court, it cannot be said that the Debtor exercised bad faith in adopting what other courts in the nation have interpreted the phrase to mean. Accordingly, the Court will not dismiss the case based upon a lack of good faith.

### CONCLUSION

Based upon the reasons discussed above, the Trustee's Amended Objection to Confirmation of Debtor's Proposed Chapter 13 Plan is Sustained. At the hearing scheduled for April 1, 2008 at 9:30 a.m., the Debtor shall advise this Court whether she would, (a) like the opportunity to file an amended plan in accordance with this Court's ruling, (b) have the case converted to a Chapter 7 or (c) have the case dismissed. The Court will enter a separate order that is consistent with these Findings of Fact and Conclusions of Law.

---

4. For example, when presented with the issue of debtors who were expected to receive annual bonuses during the life of their chapter 13 plan, a court in this district reasoned that "Form B22C will be the basis for projected disposable income unless there is evidence that simply using the historic six-month snapshot does not form a reasonable basis for projecting income forward." *In re Arsenault,* 370 B.R. 845, 852 (Bankr.M.D.Fla.2007).

5. It is this Court's opinion that it was Congress' intent when it passed BAPCPA to get as much money to unsecured creditors as possible. Thus, applying the "snapshot" approach in cases such as the instant one would produce absurd results, as debtors would not be required to pay all their disposable income into the plan.

6. The Debtor is entitled to deduct any payments that came due post petition on the second mortgage prior to it being stripped.