**In re Eartha Evelyn NORWOOD–HILL, Debtor.**

**No. 08–426–PMG.**

United States Bankruptcy Court, M.D. Florida.

March 19, 2009.

Albert H. Mickler, Jacksonville, FL, for Debtor.

Elena L. Escamilla, Kenneth C. Meeker, Miriam G. Suarez, United States Trustee, Orlando, FL, for U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court upon the United States Trustee's (the Trustee's) Motion to Dismiss (the Motion) pursuant to 11 U.S.C. § 707(b)(1) based upon a presumption of abuse under 11 U.S.C. § 707(b)(2) and abuse arising under 11 U.S.C. § 707(b)(3). After hearings held on July 10, 2008 and October 15, 2008, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On January 26, 2008, Eartha Evelyn Norwood–Hill (Debtor), filed a petition under Chapter 7 of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). Debtor's Chapter 7 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income reflects annualized income of $84,694.44, which is above the median income of $49,234.00, for a household of two in Florida. Accordingly, Debtor was required to complete the remainder of Form 22A. On line 42 of Form 22A, Debtor included three secured payments for two real pieces of property that she is surrendering, for a deduction of $3,650.78. Debtor's Form 22A shows that she has negative monthly disposable income under § 707(b)(2) in the amount of $1,978.63. Debtor is a 49 year-old single mother, who has no real or personal property of any significant value other than the $40,000.00 she has in her Thrift Savings Plan/ 401K(TSP), and the Chapter 7 Trustee has filed a Notice of No Distribution. Debtor recently moved from Georgia to Jacksonville, in order to retain her job as a housing program specialist with the United States Department of Housing and Urban Development.

The Trustee filed the instant Motion to Dismiss upon the basis that Debtor is not entitled to deduct secured payments on collateral that is being surrendered. The Trustee contends that if these deductions were disallowed that Debtor would have disposable monthly income in the amount of $2,021.41, thereby indicating that a presumption of abuse exists.

If the Court finds that the Debtor may take these deductions, in which case the presumption of abuse would not arise, the Trustee alternatively maintains that Debtor's case should be dismissed pursuant to 11 U.S.C. § 707(b)(3), under a totality of the circumstances analysis. Specifically, the Trustee objects to the deductions Debtor is taking for contributions and loan repayments she is making to her TSP, as well as contributions to savings bonds. These deductions total $585.11 and are comprised as follows: TSP loan repayment in the amount of $151.78, TSP contribution in the amount of $325.00 and savings bond contributions in the amount of $108.33. The Trustee asserts that if Debtor did not make these contributions she would have the ability to repay her creditors at least $585.11 per month.

### CONCLUSIONS OF LAW

In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA") Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the bankruptcy system and to ensure that debtors with the ability to repay their debts do so. 11 U.S.C. § 707(b)(1) of the Bankruptcy Code provides that a court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(2)(A)(i) requires a court to presume that abuse exists if the debtor's current monthly income, reduced by allowed deductions and multiplied by 60, is greater than or equal to the greater of 25% of the debtor's nonpriority, unsecured claims or $6,575, whichever is greater, or $10,950.

Stated differently, if after deducting all allowable expenses from a debtor's current monthly income, the debtor has less than $109.58 per month in net income (i.e., less than $6,575 to fund a 60–month plan), the filing is not presumed abusive. If the debtor has monthly net income of $182.50 or more (i.e., at least $10,950 to fund a 60–month plan), the filing is presumed abusive. Finally, if the debtor's net monthly income is more than $109.58 but less than $182.50, the case will be presumed abusive if that sum, when multiplied by 60 months, will pay 25% or more of the debtor's nonpriority, unsecured debts.

A debtor may only rebut the presumption of abuse by demonstrating special circumstances, such as a serious medical condition or order to active duty service in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(i).

Alternatively, if the presumption of abuse does not arise or the Court finds the debtor has successfully rebutted the presumption of abuse, the United States Trustee may then request dismissal pursuant to § 707(b)(3). Pursuant to § 707(b)(3), the Court shall consider whether the debtor filed the petition in bad faith or whether the totality of the circumstances of the Debtor's financial situation demonstrates abuse.

In the instant case, the first issue before the Court is whether pursuant to 11 U.S.C. § 707(b)(2)(A)(iii)(1) Debtor may deduct payments for real property that will be surrendered. The Trustee asserts that if the payments on the property being surrendered are not deducted on line 42, the Debtor would have disposable income on Line 50 in the amount of $2,202.41, thus indicating that a presumption of abuse exists. However, if the Court determines that Debtor is entitled to deduct the payments on the real property, the presumption of abuse will not arise. In this instance, the Court will then turn to the Trustee's alternative argument under 11 U.S.C. § 707(b)(3)(B) as to whether the totality of the circumstances in regards to Debtor's financial situation demonstrates abuse.[1]

## A. Snapshot approach vs. future oriented approach under 11 U.S.C. § 707(B)(2).

The language of § 707(b)(2)(A)(iii) which is at issue provides as follows:

[t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; . . . divided by 60.

---

1. As the Trustee does not contend that the Debtor has filed the case in bad faith, any reference to § 707(b)(3) relates to the totality of the circumstances analysis.

11 U.S.C. § 707(b)(2)(A)(iii). The resulting amount from this mathematical formula is then deducted from the debtor's current monthly income as a means of determining the debtor's disposable monthly income.

Since BAPCPA became effective in October of 2005, the meaning of § 707(b)(2)(A)(iii)(I) has been highly contested and two polar opposite schools of thought have emerged. The two most commonly adopted approaches are typically referred to as the "snapshot" approach and the "future oriented" approach. The first line of cases reasons that the plain language of § 707(b)(2)(A)(iii)(I) was meant to create a "snapshot" of the debtor's finances as of the petition date and does not factor into consideration a debtor's future intentions. It is of importance to note, that the majority of cases in which the "snapshot" approach has been adopted, have been within the context of a chapter 7 case. *See In re Rudler,* 388 B.R. 433 (1st Cir. BAP 2008); *In re Thomas,* 395 B.R. 914 (6th Cir. BAP 2008); *In re Ralston,* 400 B.R. 854 (Bankr.M.D.Fla. Feb.10, 2009)(holding "[A]s the function of the means test is to be a mechanical formula for establishing a presumptive bar to obtaining relief in a Chapter 7 case, it is fitting that the deductions should be bright line measurements."); *In re Parada,* 391 B.R. 492 (Bankr.M.D.Fla.2008); *In re Castillo,* No. 08–10878, 2008 WL 4544467 (Bankr.S.D.Fla. Oct. 10, 2008); *In re Burmeister,* 378 B.R. 227, 231 (Bankr.N.D.Ill.2007)(reasoning that Congress meant the disposable income calculation under BAPCPA to be mechanical and held that § 707(b)(2)(A)(iii)(I) is clear on its face in requiring deductions based on payments that are "contractually due."); *In re Hayes,* 376 B.R. 55 (Bankr.D.Mass. 2007); *In re Benedetti,* 372 B.R. 90 (Bankr.S.D.Fla.2007)("a snapshot view of the Debtor's expenses on the date of filing

makes sense in the context of a Chapter 7 case."); *In re Kelvie,* 372 B.R. 56 (Bankr.D.Idaho 2007); *In re Wilkins,* 370 B.R. 815 (Bankr.C.D.Cal.2007); *In re Kogler,* 368 B.R. 785 (Bankr.W.D.Wis.2007); *In re Longo,* 364 B.R. 161 (Bankr.D.Conn. 2007); *In re Mundy,* 363 B.R. 407 (Bankr. M.D.Pa.2007); *In re Hartwick,* 359 B.R. 16 (Bankr.D.N.H.2007); In *re Sorrell,* 359 B.R. 167 (Bankr.S.D.Ohio 2007); *In re Randle,* 358 B.R. 360 (Bankr.N.D.Ill.2006); *In re Walker,* 2006 WL 1314125 (Bankr. N.D.Ga.2006); *In re Oliver,* 2006 WL 2086691, at *3 (Bankr.D.Or. June 29, 2006)(reasoning "[I]f Congress intended to limit secured debt payments contractually due from debtors on the petition date to those where actual future payments will be made . . . , it knew how to do so.").

The second line of cases utilizes a "future oriented" approach, in which only those expenses which the debtor reasonably expects to pay over the sixty month period may be properly deducted. Just as the courts that have adopted the "snapshot approach" have done so primarily in the context of a Chapter 7, the courts that have adopted the "future oriented" approach have done so mainly within the context of a Chapter 13. *In re Holmes,* 395 B.R. 149 (Bankr.M.D.Fla.2008); *In re Vernon,* 385 B.R. 342 (Bankr.M.D.Fla. 2008); *In re Kalata,* 2008 WL 552856 (Bankr.E.D.Wis. Feb.27, 2008); *In re Burden,* 380 B.R. 194 (Bankr.W.D.Mo.2007); *In re Spurgeon,* 378 B.R. 197 (Bankr. E.D.Tenn.2007); *In re McGillis,* 370 B.R. 720 (Bankr.W.D.Mich.2007); *In re Ray,* 362 B.R. 680 (Bankr.D.S.C.2007); *In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C. 2006); *In re Love,* 350 B.R. 611 (Bankr. M.D.Ala.2006); *In re Harris,* 353 B.R. 304 (Bankr.E.D.Okla.2006); *In re Skaggs,* 349 B.R. 594 (Bankr.E.D.Mo.2006).

Although this Court has previously dealt with the issue of how § 707(b)(2)(A)(iii)(I)

should be interpreted, it did so within the context of a Chapter 13 case. *In re Holmes*, 395 B.R. at 152. In *Holmes*, this Court considered the requirement of 11 U.S.C. § 1325(b)(3) that disposable income for above median debtors shall be determined by a debtor's "current monthly income," less amounts reasonably necessary "to be expended" as determined by § 707(b)(2)(A) and (B). *Id.* In making its determination, this Court stated that it viewed "the 'snapshot' approach as being directly at odds with § 1325(b)(1)(B) which requires a debtor to fund a plan with all of his or her disposable income." *Id.* This Court also reasoned that it "looks to what is on the table at the time of confirmation. As one of the main requirements in Chapter 13 is that a plan be funded with all of a debtor's disposable income, it would go against the very essence of Chapter 13 to allow a debtor to deduct an expense that is non-existent at the time of confirmation." *Id.* at 153. Accordingly, in the *context* of a Chapter 13, the Court held that a debtor's "projected disposable income" cannot be properly determined by a strict mechanical calculation of Form B22C." *Id.*

It is important to note that this Court's adoption of the "future oriented" approach in *Holmes* was based upon the view that the "snapshot" approach was "directly at odds with § 1325(b)(1)(B) which requires a debtor to fund a plan with all of his or her disposable income." *Holmes*, 395 B.R. at 152. The mechanisms, however, of Chapter 13 and Chapter 7 are separate and distinct from one another, and there are different considerations with respect to how issues arising under these respective chapters are handled. Thus, as the instant case is a Chapter 7, the considerations this Court took into account in *Holmes* as to § 1325 do not arise. Therefore, the Court's reasoning as to why it adopted the "future oriented" in *Holmes* is not applicable, and the Court will engage in a distinct analysis of how § 707(b)(2)(A)(iii)(I) should be interpreted in the context of a Chapter 7 case.

■ For the reasons set forth herein, the Court finds that the "snapshot" approach best comports with the mechanisms of how Chapter 7's are intended to function under BAPCPA. This Court agrees with the statement that "Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the passage of time or with a change in the debtor's lifestyle." *In re Benedetti*, 372 B.R. at 96 (quoting *In re Walker*, 2006 WL 1314125 at *5). In *Benedetti*, the court accurately reasoned that when § 707(b)(2)(A)(iii)(I) is read as a whole that the words,

> " 'scheduled as contractually due to secured creditors' does not require, as a prerequisite to allowing the deduction, that those debts *actually* be paid 'in each month of the 60 months following the date of the petition.' " *Id.* at 95. Instead, "[s]ection 707(b)(2)(A)(iii) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, without regard to whether the property securing the debt is necessary and without regard to whether the payments are actually made." *Id.*

■ Further, as Judge Williamson reasoned in *Ralston*, if deductions under the means test in a Chapter 7 case were not bright line measurements, "courts would have to consider the facts and circumstances of each case, including post-petition events, such as the surrender of collateral, when conducting a Means Test analysis under Chapter 7." *In re Ralston*, 400 B.R. at 863–64; *see also Fokkena v. Hartwick*, 373 B.R. 645, 655–56 (reasoning that to require the court in each case to

look "into each debtor's intent and individual circumstances ... would be at odds with Congress's purpose of creating a mechanical means test."); *In re Parada*, 391 B.R. at 497 ("[T]he means test is a mechanical test, based only superficially on a debtor's reality, the purpose of which is to create a bright line presumptive test of eligibility."). This Court agrees with the reasoning and analysis applied by courts which have adopted the "snapshot" approach, that a debtor's financial condition for purposes of the Means Tests should be evaluated on the petition date. Thus, the Court finds that § 707(b)(2)(A)(iii)(I) does not require a forward looking assessment of the secured payments that a debtor will actually make on contractually required payments in all 60 months following the date of the petition.

The Court also does not agree with the Trustee's assertion that the "snapshot" approach fails to serve Congress's purpose in enacting the means test. First, it is of importance to note that a determination that the presumption of abuse does not arise pursuant to the means test, does not close the door on conversion or dismissal. In instances where a court finds that the presumption does not arise, the case may still be converted or dismissed under § 707(b)(3). Thus, the Court does not find that the "snapshot" approach goes against Congress's intent to ensure that debtors who have the resources to pay their creditors do so. As a bankruptcy court in Texas reasoned, "[t]o allow a movant to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test." *In re Singletary*, 354 B.R. 455, 465 (Bankr.S.D.Tex.2006); *see also Smale*, 390 B.R. at 119 (holding "[I]f the means test included future circumstances it would no longer act as a mere "mathematical estimate" using the income and

expense figures provided for on Form B22 but rather would necessitate an analysis of a variety of factors, such as whether a debtor intends to surrender collateral (and the possible effects thereof), which could significantly delay administration of the case."); *In re Haman*, 366 B.R. 307, 318 (Bankr.D.Del.2007) (reasoning that "consideration of the potential results under a hypothetical chapter 13 plan belongs more properly under the § 707(b)(3) totality of the circumstances test."). It appears to this Court, that the means test and the totality of the circumstances test were designed to be separate and distinct from one another. The means test is meant to be applied as a strict mathematical formula, while the totality of the circumstances test is a fluid test that takes into account a variety of different factors. Thus, to utilize the "forward looking" approach in the context of a Chapter 7 would morph the means test into something it was not intended to be. Thus, this Court joins other courts in holding that § 707(b)(3) is the proper place to conduct the totality of the circumstances analysis.

## B. Totality of the Circumstances

As the Court has determined that the presumption of abuse does not arise in the instant case, the Court will now consider the Trustee's alternative argument that the case should be dismissed under 11 U.S.C. § 707(b)(3) based upon the totality of the circumstances.

Pursuant to 11 U.S.C. § 707(b)(3) the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

The Trustee's primary argument is that Debtor should not be allowed to include

payment deductions for her TSP loan repayments in the amount of $151.78, TSP contributions in the amount of $325.00 and the purchase of savings bonds in the amount of $108.33. If these amounts were eliminated, Trustee asserts that Debtor would have an additional $565.11 per month, which would allow her to repay $35,906.60, equating to 55% of her unsecured debt, to unsecured creditors.

■ Prior to the enactment of BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based upon the "totality of the circumstances."[2] Under BAPCPA, however, the standard required for dismissal has been lowered from a showing of substantial abuse to a showing of abuse.[3] The Court still finds it appropriate though to consider the factors employed pre-BAPCPA for determining abuse as "[s]ection 707(b)(3) incorporates the judicially constructed tests of bad faith and totality of the circumstances, concepts which were used pre-BAPCPA for determining whether a debtor's Chapter 7 case should be dismissed for 'substantial abuse.'" *In re Cribbs*, 387 B.R. 324, 333 (Bankr.S.D.Ga. 2008).[4] In the instant case, as Debtor has rebutted the presumption of abuse, the Trustee bears the burden of proving that the totality of circumstances as to her financial situation constitutes abuse. *In re Walker*, 383 B.R. 830, 836 (Bankr.N.D.Ga. 2008)("the U.S. Trustee is required to come forth with the evidence to persuade the Court that relief would be an abuse.").

■ The Court notes that under BAPCPA, a debtor's ability to pay is still a *primary* although *not conclusive* factor to consider when looking at the totality of the circumstances under § 707(b)(3)(B). *In re Cribbs*, 387 B.R. at 334 (stating that "in order for the United States Trustee to satisfy its burden under the 707(b)(3)(B) "totality of the circumstances" test, the Trustee must show more than just Debtors' ability to pay."). In a pre-BAPCPA case, this Court rejected the contention that the ability to pay, standing alone, is sufficient to warrant dismissal. *In re Degross*, 272 B.R. at 313; *see also In re Johnson*, 318 B.R. 907, 916–917(Bankr.N.D.Ga.2005)("[T]he Debtor's ability to pay as measured by what could be paid in a hypothetical chapter 13 case is not a conclusive factor."); *In re Rogers*, 168 B.R. 806, 808 (Bankr.M.D.Ga.1993) ("This court will stop short, however, of adopting the position that the ability to repay debts through a Chapter 13 Plan is the only determining factor. Substantial abuse should be determined on a case-by-case basis after considering the totality of the circumstances"). Specifically, in *Degross* this Court found that the better reasoned analysis is one that considers a debtor's ability to pay in conjunction with other circumstances and adopted the following factors to determine whether they militate against or in favor of dismissal:

1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially re-

---

**2.** This Court defined "substantial abuse" as that which shocks the conscience. *In re Degross*, 272 B.R. 309, 313 (Bankr.M.D.Fla. 2001).

**3.** "BAPCPA removed the presumption in favor of granting the debtor relief and lowered the standard required for dismissal from a showing of a 'substantial abuse' to a showing of an 'abuse.'" *In re Walker*, 383 B.R. at 837.

**4.** The distinction is that the Court will analyze these factors under the new standard of *abuse* versus the old standard of *substantial abuse*.

mained the same; the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with her creditors; 8) the accuracy of the debtor's schedules and statement of current income and expenses; and 9) whether the debtor filed the petition in good faith.[5]

*Id.* at 313–314.

■ As the Court finds the above factors to still be applicable post BAPCPA, it will incorporate them into the analysis. Debtor is a 49 year old single mother, who relocated to Florida from Georgia, after the breakup of her marriage, in order to retain her job as a housing program specialist with the United States Department of Housing and Urban Development. There are no allegations of bad faith and upon review of the evidence it is clear that Debtor was propelled into bankruptcy based upon unforeseen circumstances. Further, there is no evidence to suggest that Debtor's standard of living has substantially improved since filing for bankruptcy and Debtor has no real or personal property of any significant value. In fact, Debtor's testimony at the hearing, which the Court finds to be credible, paints the picture of a single mother who is struggling through a rough economic time, after a failed marriage, with the goal of making a decent life for herself and her young son.

■ The Court also notes that Debtor's unsecured creditors would not receive a meaningful distribution in a Chapter 13 case as the contributions and loan repayments Debtor makes to her 401K would not be considered as disposable income with which to fund a Chapter 13 plan. *In re Garrett,* Ch. 13 Case No. 07–3997, 2008 WL 6049236 (M.D.Fla. January 18, 2008). In *Garrett,* this Court held that based upon the addition of §§ 541(b)(7) and 1322(f) to the Bankruptcy Code, retirement account contributions and repayment of a loan secured by a retirement account do not constitute disposable income in a Chapter 13 case.[6] *Id.* at *2. Finally, as a bankruptcy curt in Ohio reasoned, "[T]he mere mathematical ability to fund a Chapter Thirteen Plan if contributions or loan

---

**5.** As to the factor that considers whether a debtor filed a petition in bad faith, the Court recognizes that under BAPCPA "the debtor's total financial situation as a measure of ability to pay, and bad faith are separate and sufficient grounds for dismissal. Either ability to pay or bad faith are separate and distinct grounds for dismissal." *In re Parada,* 391 B.R. at 499.

**6.** Following its decision in *Garrett,* this Court was faced with the issue of whether a debtor's contribution to his TSP and TSP loan repayment constituted special circumstances under § 707(b)(2)(B)(ii). *In re Tauter,* 402 B.R. 903 (Bankr.M.D.Fla.2009). In *Tauter,* this Court held that a debtor was not able to rebut the presumption of abuse based upon the assertion that the contributions to his TSP and TSP loan repayment constituted special circumstances under § 707(b)(2)(B)(ii). Specifically, this Court reasoned that as the debtor's contribution to his TSP account was entirely voluntary that it was "the antithesis of an expense for which there is no reasonable alternative."[6] *Id.* at 908. The instant case, however, is distinguishable from *Tauter* because (1) the presumption of abuse has not been triggered and (2) the court is analyzing the issue of TSP loan repayments and contributions under § 707(b)(3)'s totality of the circumstances test.

**914**

repayments to a retirement account are not made is alone insufficient to find an abuse of the provisions of Chapter Seven." *In re Tucker,* 389 B.R. 535, 540 (Bankr. N.D.Ohio 2008); *see also In re Vansickel,* 309 B.R. 189, 208–209(Bankr.E.D.Va.2004)(reasoning that abuse of the provisions of Chapter 7 imply "some sort of action that crosses over the line of appropriateness. It permits consideration of surrounding factors so that abusive use of repayment of retirement plan loans and additional contributions to retirement plans can be separated from legitimate uses."). Taking all factors surrounding Debtor's circumstance into account, the Court finds that such factors militate against dismissal of Debtor's case. Therefore, the Court does not find that the Trustee has met its burden of proving that a totality of circumstances of Debtor's financial situation constitutes "abuse." Accordingly, the Court finds the Debtor is entitled to a "fresh start" and will not dismiss her case pursuant to § 707(b)(3).

## CONCLUSION

This Case involves the Trustee's objection to the Debtor's deductions on Form 22A of secured payments on real property that is being surrendered. Upon review, the Court finds that as the Means Test operates as a mechanical test, § 707(b)(2)(A)(iii)(I) does not require a forward looking assessment of the secured payments a debtor will actually make on contractually required payments in all 60 months following the date of the petition. Instead, the Court takes the view that the plain language of § 707(b)(2)(A)(iii)(I) was meant to create a "snapshot" of a debtor's finances as of the petition date and does not factor into consideration a debtor's future intentions. Accordingly, the Debtor is entitled to deduct the real property that is being surrendered.

As to the Trustee's alternative argument that the case should be dismissed pursuant to § 707(b)(3)'s totality of the circumstances test, it is the Court's finding that the Trustee has not met its burden of proving that a totality of Debtor's circumstances as to her financial situation constitutes abuse. Accordingly, the Trustee's Motion to Dismiss will be denied. The Court will enter a separate order that is consistent with these Findings of Fact and Conclusions of Law.