In re Sean M. BRADY and LaDonna J. Brady, Debtors.

No. 9:09–bk–05895–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Nov. 3, 2009.

Carmen Dellutri, The Dellutri Law Group, PA, Fort Myers, FL, for Debtors.

J. Steven Wilkes, U.S. Dept. of Justice, Office of the U.S. Trustee for Region 21, Tampa, FL, for the U.S. Trustee.

### ORDER ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. §§ 707(b)(1) AND (b)(2), OR IN THE ALTERNATIVE, § 707(b)(3) (Doc. No. 16)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case or Sean M. and La-Donna J. Brady (the "Debtors") is the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2), or in the Alternative, § 707(b)(3) (the "Motion")(Doc. No. 16). The matter was duly scheduled for hearing at which time this Court heard argument of counsel for the respective parties, considered the relevant portions of the record, and based on the same, now makes its conclusions as follows.

It should be stated at the outset that the United States Trustee (U.S.Trustee) and the joint individual Debtors, by and through their respective counsel, agree that the Motion seeks dismissal of the above-referenced Chapter 7 case on three separate bases. To facilitate the determination of the matter, the parties advised the Court that it should first consider dismissal pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2), since the Debtors are surrendering their principal residence. Howev-

er, at the hearing on the Motion, the U.S. Trustee requested that if this Court finds that the Debtors may take the deductions, resulting in the Debtors passing the Means Test, the U.S. Trustee alternatively argues that the Debtors case should be dismissed pursuant to 11 U.S.C. § 707(b)(3), under the totality of the circumstances analysis, contending that the totality of the Debtors' financial circumstances demonstrates abuse pursuant to Section 707(b)(3).

The issues raised by the U.S. Trustee submitted for this Court's consideration on the Motion to Dismiss are based on the parties Joint Stipulated Facts, filed on August 13, 2009 (Doc. No. 23) and are as follows.

The Debtors filed their Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code on March 28, 2009. The initial meeting of creditors pursuant to 11 U.S.C. § 341 was conducted and concluded on May 5, 2009. Pursuant to Section 707(b)(1) of the Bankruptcy Code, the Debtors are individuals whose debts are primarily consumer debts. The Debtors' unsecured non-priority unsecured debts total $33,130.10. The Debtors' claims secured by property of the estate are in the total amount of $193,399, and they have $24,397.10 in general unsecured claims. Pursuant to Section 707(b)(2) of the Bankruptcy Code, the Debtors state that their monthly income is $5,451.42. Both Debtors are individuals earning regular income and are eligible for relief pursuant to Chapter 13 of the Bankruptcy Code.

Lines 20A and 20B(a) through (c) of Official Form 22A incorporates the Internal Revenues Service's Local Housing and Utility Standards. Pursuant to the applicable aggregate Local Housing and Utilities Standard, applicable for a case filed in Lee County, Florida, is $1,386.00, including $512.00 in non-mortgage expense (Line 20A) and $874.00 in mortgage/rent expenses (Line 20B). The Debtors are not current in their obligations to make the required payment of the secured debt encumbering their home. The secured creditor has obtained relief from the automatic stay and the Debtors have relocated to rental property. Line 42 of the Official Form 22A allows for the deduction of future payments on secured debt.

The Joint Stipulated Facts filed by the parties provide for the following contested facts. The joint individual Debtors state that the following lines on their Form B–22A should be read as follows:

(a) Line 20B-$0.00—as the Debtors provided for their principal mortgage in the amount of $1,536.00 monthly, which they are surrendering.

(b) Line 25–$703.93—as the Debtors taxes, which they incur monthly, would be determined using itemized deductions for mortgage interest and real estate taxes on real property, which they are surrendering.

(c) Line 42–$2,166.77—as the Debtors have provided for their future payments on secured claims, including their mortgage on their principal residence, in the amount of $1,536.00, which they are surrendering.

(d) Line 45–$0.00—as the Debtors do not compute any disposable income available for a Chapter 13 trustee's administration.

(e) Line 50–($58.43)—as Debtors do not compute any disposable income available.

The U.S. Trustee asserts that the Lines on Form B–22A should reflect the following:

(a) Line 20B-$874.00—as the Debtors are surrendering their principal residence and will not have any future

monthly payments on the debt secured by their principal residence.

(b) Line 25–$817—as the Debtors would not be able to use the itemized deductions for mortgage interest and real estate taxes on real property as they will be renting and no longer paying mortgage interest or real estate taxes on their surrendered principal residence.

(c) Line 42–$630.77—as the Debtors are surrendering their principal residence and will not have any future monthly payments on the debt surrendered by their principal residence.

(d) Line 45–$98.67—as the Debtors would have $1,121.27 in monthly income in Chapter 13 standing trustee could administer on behalf of allowed secured, priority, and general unsecured claimants in a hypothetical Chapter 13 plan administration.

(e) Line 50–$391.83—as the Debtors would have $11,121.27 in monthly income the Chapter 13 standing trustee could administer on behalf of the allowed secured, priority, and general unsecured claimants. Thus, the remaining amount, $391.83 would be monthly disposable income available for distribution to general unsecured claimants after distribution to the secured, priority, and administrative claims in a hypothetical Chapter 13 plan administration.

Thus, it is for this Court to determine whether the Debtors can: 1) deduct secured debt payments when the Debtors have surrendered their principal residence; and 2) whether the Debtors are able to use the itemized deductions for mortgage interest and real estate taxes on real property since they are renting and no longer paying mortgage interest or real estate taxes on their surrendered principal residence.

Prior to the enactment of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 707(b) of the Bankruptcy Code provided a presumption in favor of discharging the debts of a Chapter 7 debtor. A party seeking dismissal pursuant to Section 707(b) was required to show that permitting the case to proceed under Chapter 7 of the Bankruptcy Code would be a substantial abuse of the provisions provided under Chapter 7. In enacting BAPCPA, Congress added the provision to Chapter 7 in response to concerns that some debtors who could easily pay their creditors might resort to Chapter 7 to avoid their obligations.

Section 707(b)(1) provides that, after notice and a hearing, the court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the means test determines whether a presumption of abuse arises in a debtor's bankruptcy case using debtor's current monthly income and certain allowed deductions. Section 707(b)(2)(A)(i) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

(II) $10,950.

11 U.S.C. § 707(b)(2)(A)(i).

■■■ Therefore, if after deducting the allowable expenses from a debtor's current monthly income, the debtor has less than $109.58 per month in net income, the filing is not presumed abusive since the amount would be less than $6,575.00 to fund a 60 month plan. However, if the debtor's net monthly income exceeds $182.50 or more, or at least $10,950.00 to fund a 60 month plan, the filing is presumed to be abusive. In addition to the foregoing, if the debtor's net monthly income is more than $109.58 but less than $182.70 per month, the case will be presumed to abusive if the sum multiplied by 60 months, will provide funds that will pay 25 percent or more of the debtor's nonpriority unsecured debts.

■■ This presumption may be rebutted by the Debtors by presenting evidence of special circumstances. 11 U.S.C. § 707(b)(2)(B).

Section 707(b)(2)(A)(ii)(I) provides, in pertinent part:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

Section 707(b)(2)(A)(iii) provides that:

The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

■■ This Court will first address whether Debtors may deduct the average monthly payment from the IRS Housing and Utilities Standards on Line 20B. The U.S. Trustee argues that allowing the deduction for surrendered secured property would be contrary to the purpose of § 707(b)(2)(A)(iii). The U.S. Trustee contends that if these deductions were disallowed the Debtors would have monthly disposable income of $391.83, thereby indicating that a presumption of abuse exists. Furthermore, it is the U.S. Trustee's contention that if the Debtors' total non-priority unsecured debt is $33,130.10, unsecured claimants would receive approximately 70% of their claims in a Chapter 13 case. The Debtors argue that the plain meaning of the statute requires the Debtors to specifically indicate their contractual secured debt obligations on the date of their Petition for Relief and, therefore, under the Means Test, the Debtors are allowed to

deduct payments "scheduled as contractually due" on account of secured debts.

After the enactment of the BAPCPA, the question of whether secured debt payments may be deducted where the collateral will be surrendered pursuant to Section 707(b)(2)(A)(iii), has been highly contested into two opposite schools of thoughts. The two most commonly adopted approaches have been referred to as the "snapshot" approach and the "future oriented" approach. In majority of the cases on this issue have adopted that the plain language of Section 707(b)(2)(A)(iii) was to establish the "snapshot" approach of the financial obligations as of the Petition date. The majority of the cases in which the "snapshot" approach has been adopted, the cases hold that long-term secured payments that are "scheduled as contractually due" on the Petition date may be deducted without factoring in the debtor's future intention to surrender the encumbered property. *See In re Castillo*, 2008 WL 4544467 (Bankr.S.D.Fla.2008); *In re Ralston*, 400 B.R. 854 (Bankr.M.D.Fla.2009) (holding "[A]s the function of the means test is to be a mechanical formula for establishing a presumptive bar to obtaining relief in a Chapter 7 case, it is fitting that the deductions should be bright line measurements."); *In re Parada*, 391 B.R. 492, 497 (Bankr.S.D.Fla.2008) (holding "[T]he means test is a mechanical test, based only superficially on a debtor's reality, the purpose of which is to create a bright line presumption test of eligibility."); *In re Benedetti*, 372 B.R. 90 (Bankr. S.D.Fla.2007) (holding that "a snapshot view of the Debtor's expenses on the date of filing makes sense in the context of a Chapter 7 case."); *In re Randle*, 2007 WL 2668727, *7 (N.D.Ill.2007) (noting that " 'the Statement of Intention' filed at the time of the petition is not a self-executing document, that when filed automatically extinguishes a contract."); *In re Rudler*, 388 B.R. 433 (1st Cir. BAP 2008); *In re Mundy*, 363 B.R. 407 (Bankr.M.D.Pa. 2007); *In re Walker*, 2006 WL 1314125, *4 (Bankr.N.D.Ga.2006) ("The debtor's contractual liability for the debt is not eliminated upon the surrender of the collateral.")

The two cases adopting the "future oriented" approach in the Middle District of Florida have viewed the "snapshot" approach as being, in essence, in opposition of Section 1325(b)(1) of the Bankruptcy Code. The majority of the cases applying the "future oriented" approach have done so in cases filed pursuant to Chapter 13 of the Code. *See In re Vernon*, 385 B.R. 342 (Bankr.M.D.Fla.2008), *In re Holmes*, 395 B.R. 149 (Bankr.M.D.Fla.2008). Various other districts have also applied the "future oriented" approach in the context of a Chapter 13 case. See In re *McGillis*, 370 B.R. 720 (Bankr.W.D.Mich.2007); *In re Love*, 350 B.R. 611 (Bankr.M.D.Ala.2006).

This Court in the case of *In re Vernon*, 385 B.R. at 345, previously held that "the term disposable income shall be viewed as the status of expenses actually to be paid under the plan on the date of confirmation rather than a snapshot approach where some courts have found the date of filing is the controlling date." Thus, this Court determined that debtors cannot deduct monthly secured debt payments on collateral that is to be surrendered under a Chapter 13 plan. However, this Court also noted that "[t]he policy aim of Chapter 7 is completely different from the policy aim of Chapter 13; therefore the allowance of a deduction under Chapter 7 has no relevance under a Chapter 13 plan." *Id.* at 346. Therefore, this Court is satisfied that the "future oriented" approach is not applicable to a case filed pursuant to Chapter 7 of the Bankruptcy Code.

When one considers the overall policy aims of the Bankruptcy Code, the "snapshot" approach of the debtor's expenses on the Petition date is applicable in a case filed under Chapter 7 of the Bankruptcy Code. Based on the foregoing, this Court is satisfied that based on the plain meaning of this statutory provision and considering the Means Test as a whole, 11 U.S.C. 707(b)(2)(A)(iii)(I) allows a debtor to deduct from their current monthly income long-term secured debt payments that are allowed on the Petition date, regardless of whether a debtor intends to surrender the property securing the debt. Be that as it may, the U.S. Trustee's Motion to Dismiss filed pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2) should be denied.

This leaves for this Court's consideration the remaining issue of whether the instant case should be dismissed as an abuse of Chapter 7 based on the totality of the circumstances, pursuant to 11 U.S.C. § 707(b)(3).

The United States Trustee has alternatively asked this Court to dismiss Debtor's Chapter 7 under 11 U.S.C. § 707(b)(3), arguing that the granting of relief would be an abuse of the provisions of Chapter 7 given the totality of circumstances of Debtor's financial situation.

Pursuant to 11 U.S.C. § 707(b)(3), the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances ... of the debtor's financial situation demonstrate abuse.

11 U.S.C. § 707(b)(3).

■■■ Since the presumption did not arise, the United States Trustee bears the burden of proving that a totality of circumstances of the debtor's financial situation demonstrates "abuse." *In re Cribbs*, 387 B.R. 324, 332 (Bankr.S.D.Ga.2008). "[I]n order to prove a totality of circumstances of a debtor's financial condition demonstrates abuse, the United States Trustee must show more than a debtor's ability to fund a Chapter 13 plan." *In re Cribbs*, 387 B.R. at 334.

■■■ " '[T]he sheer mathematical ability to fund a chapter 13 plan can, and properly should, be considered and weighed as one, but only one, factor within a totality of circumstances analysis. To artificially limit this Court's examination of the debtor's financial condition to one factor 'is at odds with the totality of circumstances inquiry mandated by Congress.' " *Id., (quoting In re Beckerman*, 381 B.R. 841, 845 (Bankr.E.D.Mich.2008)). Therefore even though the primary factor is whether a debtor has the ability to repay a meaningful portion of his debts from future income, the United States Trustee must prove more. Some of the factors for "proving more" include:

(1) Whether the bankruptcy filing was precipitated by an unforseen or sudden calamity, such as an illness or unemployment;

(2) Whether the debtor is eligible for chapter 13 relief;

(3) Whether the debtor has made any efforts to repay his debts or negotiate with creditors; whether there are non-bankruptcy remedies available to the debtor; or whether the debtor can obtain relief through private negotiations;

(4) Whether the debtors could provide a "meaningful" distribution in a chapter 13 case;

(5) Whether the debtor's expenses could be reduced significantly without depriving them and their dependents of necessities, including whether the debtor's schedules and statement of current income and expenses reasonably and accu-

rately reflect the true financial condition;

(6) the period of time over which the debts were incurred; and

(7) whether the debtor has a stable source of future income.

*In re Cribbs,* 387 B.R. at 335. *See also In re Behlke,* 358 F.3d 429, 437 (6th Cir.2004); *In re Krohn,* 886 F.2d 123, 126–27 (6th Cir.1989); *In re Walker,* 383 B.R. at 837.

▮ Based on the foregoing, this Court is satisfied that the United States Trustee has satisfied its burden of showing the totality of Debtor's financial situation demonstrates "abuse." To determine whether Debtor can provide a "meaningful" distribution in a hypothetical Chapter 13, courts consider the debtor's schedules, statements, and any other facts that are necessary for this analysis. There is no bright-line rule establishing what is "meaningful." Rather a court should consider both the percentage of unsecured debt a debtor is capable of paying as well as the dollar amount payable to any particular creditor or class. *In re Behlke,* 358 F.3d at 438.

The Court is satisfied that the Debtors currently are capable of making a meaningful distribution. The Debtors currently have reduced their secured debt because they have surrendered their principal residence. As noted above, after subtracting the priority unsecured debt from their disposable income, the Debtors would have approximately $23,509.69 in disposable income to pay the $33,130.10, in non-priority unsecured debt. Therefore, the unsecured claimants would receive approximately 70% of their claims in a Chapter 13 case.

Having established the primary factor of "meaningful ability," the United States Trustee must still show more, and that showing has been made. First, the Debtors are eligible for a Chapter 13 and have a stable source of future income. The

joint Debtors are gainfully employed and their annual gross incomes total $65,417.02. Also, the Debtors' unsecured debt easily falls within the Chapter 13 debt thresholds of 11 U.S.C. § 109(e). Second, there is no evidence that Debtors filed for bankruptcy because of an unforeseen calamity such as sudden illness, disability, or unemployment. Third, the Debtors have the ability to reduce their monthly expenses and fund a higher yielding Chapter 13 plan.

Based on the foregoing, this Court is satisfied that the U.S. Trustee has established, based on the totality of the circumstances showing for dismissal, the Debtors have the meaningful ability to repay their debts through Chapter 13 and granting the Debtors relief would be an abuse of the provisions of Chapter 7 pursuant to 11 U.S.C. § 707(b)(3)(B). Be that as it may, the U.S. Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3), should be granted and the Debtors' Chapter 7 case be dismissed.

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2) be, and the same is hereby denied. It is further

**ORDERED, ADJUDGED AND DECREED** that the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(3) be, and the same is hereby granted and the Debtors shall have fourteen (14) days from the entry of this Order to consider converting this case to Chapter 13.